# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RONG L. LILLIEROOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-1359-D |
| | ) | |
| STARR INDEMNITY & | ) | |
| LIABILITY COMPANY, a | ) | |
| foreign insurance company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | |
|---|---|
| STARR INDEMNITY & | ) |
| LIABILITY COMPANY, a | ) |
| foreign insurance company, | ) |
| | ) |
| Defendant/Third-Party | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CO-ORDINATED BENEFIT | ) |
| PLANS, INC., | ) |
| | ) |
| Third-Party Defendant. | ) |

## **ORDER**

Before the Court is Third-Party Defendant Coordinated Benefit Plans, Inc.'s ("CBP") Motion for Summary Judgment [Doc. No. 170], to which Defendant/Third-Party Plaintiff Starr Indemnity & Liability Company ("Starr") has

filed its response in opposition [Doc. No. 202]. The matter is fully briefed and at issue.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Pursuant to a Third Party Administrator Agreement ("the Agreement"), CBP agreed to provide third-party insurance claims administration services for Starr. Under the Agreement's terms, CBP agreed to defend, indemnify, and hold Starr harmless from "any and all claims, damages, costs and expenses, including reasonable attorney's fees, proximately caused by [CBP's] material breach of this Agreement or [CBP's] gross negligence that materially and substantially causes loss or injury." Conversely, CBP had no obligation to indemnify Starr for any claims or demands that were an "inherent business risk" of Starr's business. The Agreement stated its terms would be interpreted, construed, and governed by New York law. Starr subsequently issued a short term medical (STM) insurance policy to Plaintiff Rong Lillieroos ("Lillieroos"). Under the policy, Starr agreed to pay for fees and services that were "usual, reasonable and customary." This encompassed

---

[1] The following material facts are either uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Starr. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Immaterial facts, facts not properly supported by the record, and legal arguments/conclusions have been omitted. *See, e.g., Ysasi v. Brown*, 3 F.Supp.3d 1088, 1103 n. 12 (D.N.M. 2014) ("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute. Legal argument ... should be reserved for separate portions of the brief.'") (quoting *Ruiz v. City of Brush*, No. 05-cv-897, 2006 WL 1816454, at *4 (D. Colo. June 30, 2006) (alterations in original)).

fees that were (1) usually charged by the provider for the service or supply given, and (2) the average charged for the service or supply in the locality in which the service or supply is received, whichever was less.

In 2004, Lillieroos attended a routine exam, during which a small vaginal fibroid was found. Her attending physician determined the fibroid was not harmful. On April 17, 2007, Lillieroos had an ultrasound which showed the fibroid was still present, but remained unthreatening. On October 27, 2011, however, it was recommended that Lillieroos undergo a hysterectomy because the number of fibroids had increased to three and caused her uterus to expand. Starr pre-approved the medical procedure, and on November 18, 2011, Lillieroos underwent surgery. Due to complications from the surgery, Lillieroos was required to undergo a second operation on November 23, 2011.

Lillieroos submitted a claim under the policy. After several inquiries about the status of her claim, on March 28, 2012, Lillieroos was informed by CBP that, based on the medical records in its possession, her claim was denied because of a "pre-existing condition"[2] for which she had previously been treated. Despite this conclusion, CBP conducted no investigation to confirm whether the fibroids that

---

[2] A "pre-existing condition" was defined in the policy as "any medical condition or Sickness for which medical advice, care, diagnosis, treatment, consultation or medication was recommended by or received from a Doctor within the five years immediately prior" to the policy's effective date of coverage.

3

were removed during the hysterectomy were "pre-existing." Lillieroos responded that she had never been treated for a pre-existing condition and Lillieroos' treating physician stated the fibroids were not a pre-existing condition and their growth had no relation to the fibroid previously discovered. CBP informed Lillieroos she would receive an Explanation of Benefits (EOB) letter in a couple of days and once she received the letter, she could submit an appeal to CBP's offices in Tampa, Florida. The EOB did not, however, precisely explain the reason for the denial,[3] and CBP does not send formal denial letters. Despite her requests, Lillieroos never received a letter from CBP fully explaining its decision to deny her claim as a "pre-existing condition."

Lillieroos appealed CBP's denial by submitting two letters (on April 26, 2012 and May 30, 2012), both of which attached statements from her doctors attesting the fibroids were not a pre-existing condition. Lillieroos complained she had yet to receive any letter or written explanation as to why her claim was denied. Lillieroos also informed CBP that she had been receiving calls from collection agencies and her experience had become so stressful that it troubled her to even answer the phone. On June 5, 2012, Lillieroos called CBP about the status of her appeal; she again told the CBP representative she had yet to receive any letter

---

[3] The EOB contains a remark code and a short explanation that says "pre-existing conditions." At his deposition, a CBP representative conceded the EOB's explanation was "not very detailed."

explaining CBP's denial and received payment demands from a collection agency. The representative told her that CBP only had her medical records on file, but to allow additional time for it to receive the letters.[4] The representative also told Lillieroos she would ask her manager to review the medical records and provide her with an update on the claim. The manager, however, never followed up on Lillieroos' complaints.

On November 7, 2012, Lillieroos sued Starr in Oklahoma County District Court, asserting claims for breach of contract and bad faith. It was during this time that Starr first became aware of the coverage dispute. After being served with the lawsuit, Starr obtained her medical file from CBP and ordered an independent investigation into Lillieroos' treatment. Stacy Borans, the independent medical examiner (IME) retained by Starr, noted such fibroids were common and occurred in 30-40% of all women. According to Borans, patients are often diagnosed with incidental fibroids and never require medical advice or treatment for the condition; however, even if the patient never required diagnosis or management of the fibroid, physicians would still be required comment about it. In this case, Borans stated that since Lillieroos had the ultrasound, her doctor was obligated to

---

[4] Lillieroos did not send her appeal letters to the CBP address provided to her during the June 5 call, but to an address belonging to the insurance agent/producer. Her April 26 letter was lost and cannot be located. On or about June 14, 2012, her May 30 letter was received and scanned by CBP's mail vendor to a mailbox CBP did not use. CBP found the letter after Lillieroos' lawsuit was filed.

comment on the fibroid, even though Lillieroos did not require advice or management for it. Borans concluded the fibroids were not a "pre-existing condition" as defined in the policy. Based on the IME's findings, Starr reversed the denial and, in March 2013, directed CBP to pay the claim.[5] CBP disagreed with Starr's decision to pay the claim. Starr subsequently removed Lillieroos' action to this Court and asserted a third-party claim against CBP for indemnification.

Under the Agreement, Starr and CBP agreed to pay Lillieroos' medical bills using a low resource-based relative value scale (RBRVS)/Medicare rate rather than the "usual and customary" rate required by the policy. Use of the RBRVS system resulted in Lillieroos being responsible for payment of a substantial portion of the medical services she received. For example, her treating physician's bill totaled $2,264.00. After being reduced to the RBRVS/Medicare amount, the total paid was $938.51, leaving a balance due from Lillieroos in the amount of $1,325.49. Starr paid the balance of Lillieroos' medical bills in March 2014. Lillieroos asserted that Starr's use of the RBRVS system caused an unexcused delay and threatened to amend her lawsuit to include class allegations stemming from Starr's use of the RBRVS system. On April 8, 2014, Lillieroos and Starr reached a settlement of her

---

[5] CBP objected to the independent medical review on the grounds the IME was not provided with the policy language that defined the term "pre-existing condition." Starr provided the IME with the definition and the IME performed another evaluation. However, her supplemental report adhered to her conclusion that the fibroids were not a pre-existing condition.

claims, in which the settlement amount was apportioned between Lillieroos' bad faith/delay claim and her RBRVS allegations. Nevertheless, Starr advised CBP that it intended to pursue its indemnification action to recover settlement funds attributed to Lillieroos' allegations over the manner in which CBP handled her claim.

CBP's motion contends it is entitled to judgment as a matter of law because: (1) the evidence does not support a finding of either gross negligence or material breach of the Agreement, (2) the damages for which Starr seeks reimbursement stem from "inherent business risks" that are not covered under the indemnity clause, and (3) Starr cannot recover damages caused by its own tortious conduct.

## STANDARD OF DECISION

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). The substantive law will identify which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Birch v. Polaris Industries, Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

The Court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Id*. An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id*. Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004).

## DISCUSSION

As stated above, CBP agreed to defend, indemnify, and hold Starr harmless from "any and all claims, damages, costs and expenses, including reasonable attorney's fees, proximately caused by [CBP's] material breach of this Agreement or [CBP's] gross negligence that materially and substantially causes loss or injury." Although the Agreement states its terms would be interpreted, construed,

and governed by New York law, the parties concede Oklahoma law bears some relevance to the viability of Starr's substantive claims. The Court need not decide this choice of law issue, however, because it finds CBP's motion should be denied under either application and there is no material difference between either body of jurisprudence.

Under New York law, "[a] claim of gross negligence requires a plaintiff to prove that the defendant failed to 'exercise even slight care, scant care, or slight diligence,' ... or that the defendant's actions 'evince[d] a reckless disregard for the rights of others[.]'" *Baidu, Inc. v. Register.com, Inc.*, 760 F.Supp.2d 312, 318 (S.D.N.Y.2010) (citations omitted). Similarly, in Oklahoma, the statutory definition of gross negligence is "want of slight care and diligence." 25 OKLA. STAT. § 6. Under Oklahoma law, "gross negligence" requires the intentional failure to perform a manifest duty in reckless disregard of consequences or in callous indifference to the life, liberty, or property of another. *Palace Exploration Co. v. Petroleum Dev. Co.*, 374 F.3d 951, 954 (10th Cir. 2004). "The issue of gross negligence is a question of fact for a jury to determine." *Travers Indem. Co. of Conn. v. Losco Group, Inc.*, 136 F.Supp.2d 253, 256 (S.D.N.Y. 2001) (citing *Gentile v. Garden City Alarm Co.*, 147 A.D.2d 124, 130, 541 N.Y.S.2d 505, 509 (2d Dept. 1989); *Franklin v. Toal*, 2000 OK 79, ¶ 14, 19 P.3d 834, 837 ("Generally, the question of negligence is one for the jury.") (citations omitted).

A material breach is one "so substantial that it defeats the object of the parties in making the contract." *Frank Felix Assocs. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir.1997); *Zenith Drilling Corp. v. Internorth, Inc.*, 869 F.2d 560, 563 (10th Cir. 1989) (applying Oklahoma law, noting "a material breach ... occurs when such failure defeats the object of the contract, or when it concerns a matter of such importance that the contract would not have been made if default in that particular had been expected or contemplated.") (citations and internal quotation marks omitted). "[I]n most cases, the question of materiality of breach is a mixed question of fact and law - usually more of the former and less of the latter - and thus is not properly disposed of by summary judgment." *Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F.Supp.2d 283, 295 (S.D.N.Y. 2005).

Based on its review of the record, the Court finds there is sufficient evidence in the record to warrant further consideration by a jury of the overall handling and investigation of Lillieroos' claim. For purposes of the present motion, genuine issues of material fact exist with respect to a legitimate or arguable basis for CBP's (and Starr's) conduct, the adequacy of the conduct of the investigation and subsequent appeal, and whether CBP's actions amount to gross negligence and/or material breach of the Agreement. CBP's motion asks this Court to do what is prohibited under the applicable standard, which is to weigh the evidence. To the contrary, the Court is required to consider the evidence submitted by the parties in

support of and in opposition to the summary judgment motion and grant all reasonable inferences to the non-moving party, in this instance, Starr. In other words, the Court should not determine whether it believes CBP's evidence; rather, it must determine whether Starr has offered any specific facts that demonstrate the existence of a material fact to be tried. To this end, Starr has met its burden of presenting sufficient evidence from which a reasonable juror could conclude CBP committed gross negligence and/or materially breached the Agreement.[6]

The Court finds unavailing CBP's argument that any gross negligence or otherwise unlawful acts committed by it constituted an "inherent business risk" which bars recovery. The term "inherent business risk" is not defined in the Agreement. It cannot be reasonably said that the gross negligence of a claims administrator is an "inherent business risk" for which recovery/indemnification is not allowed. Under the Agreement, CBP agreed to "[i]nvestigate, pay, settle, or deny all Claims in accordance with the terms of the applicable policy [and] applicable laws." Agreement, ¶ 2.1(A). CBP's argument, if accepted, would effectively read out of the contract and render a nullity the parties' agreement that CBP would indemnify Starr for "any and all" claims, damages, costs and expenses caused by its material breach or gross negligence in performing said duty. Such

---

[6] Starr's request to amend its complaint (Pl. Resp. to Mot. for Summary Judgment at 39) is denied for failure to comply with LCvR 7.1(c), which states "[a] response to a motion may not also include a motion or a cross-motion made by the responding party."

interpretation is in irreconcilable conflict with the Court's responsibility "to give effect to every part [of the contract], if reasonably practicable." 15 OKLA. STAT. § 157. "[B]asic principles of contract interpretation militate against the adoption of an interpretation that would render any portion of the contract language a nullity." *Legal Aid Society v. City of New York*, 114 F.Supp.2d 204, 229 (S.D.N.Y. 2000) (applying New York law, citations omitted); *McGinnity v. Kirk*, 2015 OK 73, ¶ 37, 362 P.2d 186, 199 ("A contract is to be construed as a whole, giving effect to each of its parts, and not construed so as to make a provision *meaningless, superfluous or of no effect*.") (citations omitted, emphasis added)). Accordingly, this contention is rejected.

## CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent any issue was not specifically addressed above, it is either moot or without merit. Accordingly, the Court finds CBP's Motion for Summary Judgment [Doc. No. 170] should be **DENIED** as set forth herein.

**IT IS SO ORDERED** this 8th day of August, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE